IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ELIZAIDA RIVERA CARRASQUILLO, *et al.*,<br><br>**Plaintiffs**,<br><br>v.<br><br>EDUARDO BHATIA-GAUTIER, *et al.*,<br><br>**Defendants**. | **Civil Nos.** 13-1296, 13-1384, 13-1812, 13-1860 & 13-1896<br>(FAB) |
| JANICE TORRES-TORRES, *et al.*,<br><br>**Plaintiffs**,<br><br>v.<br><br>JAIME PERELLÓ-BORRÁS, *et al.*,<br><br>**Defendants**. | **Civil Nos.** 13-1560, 13-1862, 13-1820, 13-1895, & 15-2738<br>(FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is Oscar Serrano-Negrón ("Serrano")'s motion to unseal confidential settlement agreements and records regarding indemnification costs associated with Act No. 9 of November 27, 1966 ("Law 9"). (Docket No. 454.) For the reasons set forth below, Serrano's motion to unseal is **GRANTED**.

I. **Background**

Former employees of the Puerto Rico Senate ("Senate"), the Puerto Rico House of Representatives ("House"), and the Office of the Superintendent of the Capitol Building ("OSC") (collectively,

"plaintiffs") commenced nine civil actions against public officials (collectively, "defendants") pursuant to the First Amendment of the United States Constitution, Article II of the Puerto Rico Constitution, the Human Resources Administration System Act, and Articles 1802 and 1803 of the Civil Code. See P.R. Laws Ann. tit. 3, § 1461; P.R. Laws Ann. tit. 31, §§ 5141 *et seq*.[1] The defendants purportedly purged members of the New Progressive Party ("NPP") from the Senate, House and OSC payrolls for political gain. Id.

The parties executed two confidential settlement agreements (hereinafter, "settlement agreements"). (Case No. 13-1296, Docket No. 197; Case No. 13-1560, Docket No. 180.)[2] Essentially, the

---

[1] Officials from the Puerto Rico Senate are named as defendants in Cases Nos. 13-1296, 13-1812, 13-1860, and 13-1384. Officials from the Puerto Rico House of Representatives appear in Cases Nos. 13-1820 and 13-1895. Officials from the Office of the Superintendent of the Capitol appear in Cases Nos. 13-1862, 13-1569, and 15-2738. The OSC is responsible for "keeping and maintaining the buildings, offices and structures of the Puerto Rico Legislative Branch, as well as peripheral areas, in optimal conditions." (Case No. 13-1560, Docket No. 1.)

[2] The former Senate employees and defendants Eduardo Bhatia-Gautier, Denise Rivera-González, Tania Barbarrosa-Ortiz, Luis Ramos-Rivera, José Hernández-Arebelo, Juan Vázquez-López, and Maritza Alejandro-Cheves entered into a confidential settlement agreement on May 25, 2016 for $6,267,000.00 ("Senate agreement"), payable in one installment of $1,000,000.00, and two subsequent installments of $2,633,750.00. (Case No. 13-1296, Docket No. 197.) The former House and OSC employees entered into a confidential settlement agreement with Jaime Perelló-Borrás, Javier Vázquez-Collazo, Rosendo Vela-Birrel, Álvaro Vázquez-Ramos, Miguel Arana-Colón, Aileen Figueroa-Vázquez, Xavier González-Calderón, José Fuentes-Serrano, René Valle-Umpierre, José Sapia, and Julio Mojica on October 4, 2016 ("House/OSC agreement") for $3,690,000.00, payable in two successive installments of $2,460,000.00 and $1,230,000.00 (Case No. 13-1560, Docket No. 180.)

Civil Nos. 13-1296 *et al.*, (FAB)                                        3

plaintiffs moved to dismiss the complaints in exchange for $9,957,500.00.  Id.  Only the "case participants" and Court personnel are permitted to access these documents.  (Case No. 13-1296, Docket No. 197; Case No. 13-1560, Docket No. 180.)  These agreements contain the following confidentiality provision:

> The Plaintiffs further agree to maintain confidential the fact that they have entered into this Agreement, as well as all of its details, terms, and conditions. Unless disclosure is required by law and/or means of a Court Order issued to such effect, the Plaintiffs shall not disclose the contents of this Agreement to third parties, except as it may be reasonably necessary to reveal the terms hereof to their attorney(s), spouse, accountant(s), or representatives, who shall be bound to maintain the confidentiality of this Agreement in the same terms as them.  In the event that anyone approaches the Plaintiffs and asks them about the status of their claim, their answer shall be limited to discussing that the matter has been resolved to the satisfaction of the parties, but they shall refrain from further comment. Under no circumstances shall this document or any copy thereof be distributed to the Press or Media or any person or entity without the Defendant's written authorization.  The signatories agree not to publish, publicize, or disseminate in any way information obtained by their attorneys through the discovery process of this case.

(Case No. 13-1296, Docket No. 197 at p. 7.)[3]

The defendants failed to remit timely payments, falling into arrears for millions of dollars just as "the island effectively ran out of cash and stopped paying its debt."  Id.; Mary W. Walsh,

---

[3] The Senate and House/OSC agreements contain identical confidentiality provisions.  (Case No. 13-1296, Docket No. 197; Case No. 13-1560, Docket No. 180.)

Civil Nos. 13-1296 *et al*., (FAB)                                            4

"How Puerto Rico is Grappling with a Debt Crisis," New York Times (May 16, 2017) (available at https://www.nytimes.com/interactive/2017/business/dealbook/puerto-rico-debt-bankruptcy.html) (last visited March 9, 2022).  On May 3, 2017, the Oversight Board filed a Title III petition on behalf of the Commonwealth pursuant to the Puerto Rico Emergency Moratorium and Rehabilitation Act ("PROMESA"), 48 U.S.C. §§ 2010 *et seq.*  In re Commonwealth of Puerto Rico, No. 17-3283 (LTS) (D.P.R. May 3, 2017).  This petition triggered the automatic stay set forth in 11 U.S.C. section 362(a).  See 48 U.S.C. § 2194.[4]

On May 11, 2018, the plaintiffs requested that this Court compel the defendants, in their individual capacities, to satisfy the outstanding settlement amount.  (Docket No. 398 in Case No. 13-1296; Docket No. 239 in Case No. 13-1560.)  The settlement agreements stipulate, however, that the defendants are the

---

[4] Congress patterned the automatic stay contained in section 2194 of PROMESA on the United States Bankruptcy Code.  48 U.S.C. §§ 2102-2241.  Section 2194(b)(1) of PROMESA stays actions or proceedings against the Government of Puerto Rico that were or could have been commenced before the enactment of PROMESA.  Id. at § 2194(b)(1).  The statute also stays judicial actions "to recover a Liability Claim against the Government of Puerto Rico that arose before the enactment of [PROMESA]."  Id.  In the bankruptcy context, the automatic stay becomes operative upon the filing of a bankruptcy petition, and "is extremely broad in scope," applying "to almost any type of formal or informal action taken against the debtor."  Montalvo v. Autoridad de Acueductos y Alcantarillados, 537 B.R. 128, 140 (Bankr. D.P.R. 2015) (citing Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.03 (16th ed. 2015)).

Civil Nos. 13-1296 *et al*., (FAB)                                             5

"beneficiaries" of Law 9.  (Case No. 13-1296, Docket No. 197 at p. 4; Case No. 13-1560, Docket No. 180 at p. 5.)  Law 9 provides that:

> Every official, ex-official, employee, or ex-employee of the Commonwealth of Puerto Rico who is sued for damages in his personal capacity, when the cause of action is based on alleged violations of the plaintiff's civil rights, due to acts or omissions committed in good faith, in the course of his employment and within the scope of his functions, may request the Commonwealth of Puerto Rico to provide him with legal representation, and to subsequently **assume the payment of any judgment that may be entered against his person**.

Laws P.R. Ann. tit 32, § 3085 (emphasis added).  In sum, the individual defendants avoided trial by writing checks with public funds – checks that could not be cashed because of the automatic stay due to PROMESA.

According to the defendants, the "Commonwealth of Puerto Rico ought to pay from monies drawn from the public fisc which, as we all know, is a major component of the Debtor's [Commonwealth's] Estate."  (Case No. 13-1296, Docket No. 434 at p. 8.)  To provide context for this assertion, the Court ordered Puerto Rico Attorney General Domingo Emanuelli-Hernández to disclose the annual amount of payments made by the Commonwealth of Puerto Rico pursuant to Law 9 for each of the past ten years.  (Case No. 13-1296, Docket No. 439 at p. 4.)  The Department of Justice submitted a Law 9 expense report on February 3, 2022.  (Case No. 13-1296, Docket No.

Civil Nos. 13-1296 *et al.*, (FAB)                                                          6

452, Ex. 2.)[5]  From 2013 to the present, the Commonwealth has paid approximately $14,402,935.93 to defend and hold harmless, *inter alia*, politicians accused of civil rights violations.  Id.

| Year | Indemnification Costs |
|------|-----------------------|
| 2013 | $1,030,000.00         |
| 2014 | $1,816,010.05         |
| 2015 | $1,127,724.44         |
| 2016 | $4,154,734.62         |
| 2017 | $5,850,565.50         |
| 2018 | $150,000.00           |
| 2019 | $901.32               |
| 2020 | 0                     |
| 2021 | 0                     |

The Court denied the plaintiffs' motion to compel, holding that Law 9 "precludes the plaintiffs from seeking payment from the defendants in their individual capacities."  (Case No. 13-1296, Docket No. 456 at p. 12.)  Subsequently, Serrano moved to unseal the settlement agreement and the Law 9 expense report.  (Docket No. 454 at p. 1.)[6]  The defendants assert, however, that the

---

[5] This report is currently available only to the parties and this Court.  Case No. 13-1295, Docket No. 452, Ex. 2.)

[6] Serrano is a journalist and an attorney.  (Case No. 13-1296, Docket No. 454.)

confidentiality provisions require that these documents remain under seal. (Docket No. 458.)

## II.  Standard of Review

To determine whether an order to seal is appropriate, courts balance public and private interests. Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 70 (1st Cir. 2011) (citation and quotation omitted). The scales tip, however, "toward transparency." Id. Indeed, federal courts have long "recognize[d] a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Commc'ns, 435 U.S. 589, 597 (1978); see also In re Gitto Global Corp., 422 F.3d 1, 6 (1st Cir. 2005) ("Under the common law, there is a long-standing presumption of public access to judicial records."); see In re Providence Journal Co., 293 F.3d 1, 9 (1st Cir. 2002) (recognizing "that the public has a common-law right of access to judicial documents"). This transparency "allows the citizenry to monitor the functioning of our courts, thereby insuring [*sic*] quality, honesty and respect for our legal system." McKee, 649 F.3d at 49 (quoting FTC v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 410 (1st Cir. 1987)).

The presumption of public access is broad, extending to "materials on which a court relies in determining the litigants' substantive rights." See In re Providence Journal Co., 293 F.3d at 9 (quoting Anderson v. Cryovac, Inc., 805 F.2d 1, 13 (1st Cir.

1986); United States v. Krayetz, 706 F.3d 47, 58 (1st Cir. 2013) ("[R]elevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the presumption of access applies."). Restricting access to the docket "is a serious step, which should be undertaken only rarely and for good cause." R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 12 (1st Cir. 2009) ("Sealing orders are not like party favors, available upon request or as a mere accommodation."); In re Providence Journal Co., 293 F.3d at 10 ("[O]nly the most compelling reasons can justify non-disclosure of judicial records that come within the scope of the common-law right of access."). The defendants shoulder the burden of establishing that an order to seal is warranted. See Standard Fin. Mgmt. Corp., 830 F.2d at 410. Orders to unseal are subject to an "abuse of discretion" standard of review. McKee, 649 F.3d at 70 (citation and quotation omitted).

**III. Discussion**

The Commonwealth is a party to this litigation. Accordingly, the presumption of public access is "accentuated." See Standard Fin. Mgmt. Corp., 830 F.2d at 410 ("It cannot be ignored that this litigation involves a government agency and an alleged series of deceptive trade practices culminating (it is said) in widespread consumer losses. These are patently matters of significant public

concern."); United States v. Isaacson, Case No. 09-332, 2010 U.S. Dist. LEXIS 111348, at *6-7 (D.N.H. Sept. 28, 2010) ("Because this case involves a suit by a government agency, this court is even more reluctant to find that the public's interest is outweighed by the parties' private interests."). The Law 9 expenditures are exorbitant, drawn from the public fisc. Consequently, the public has a significant interest in knowing how its government is spending its money.

The defendants set forth two arguments in support of the order to seal. (Case No. 13-1296, Docket No. 458.) First, they contend that restricted access to the settlement agreements and the Law 9 expense report "is necessary . . . because otherwise, the Commonwealth's position at the negotiating table will be considerably undermined." Id. at p. 3. One party's strength is the other's weakness. The defendants' perceived advantage at the "negotiating table" is immaterial to the Court's analysis, and is insufficient to rebut the presumption of public access to judicial records.

Second, the defendants cite the confidentiality provisions in the settlement agreements. Id. at p. 7. They assert that "the signatory parties are bound by the confidentiality clause in the settlement covenant into which they entered voluntarily." Id. These provisions do not, however, overcome the presumption of

Civil Nos. 13-1296 *et al.*, (FAB)                                                    10

public access.  See <u>Gosel v. Boley Int'l Ltd.</u>, 738 F.3d 831, 835 (7th Cir. 2013) ("In neither case have [the parties] offered any reason for secrecy except that they have a confidentiality agreement. Obviously, that's insufficient, and I could stop there; because there is potential public value to disclosing the settlement terms, including amount, parties have to give the judge a reason for not disclosing them – and the fact that they don't want to disclose is not a reason."); <u>Brown v. Advantage Eng'g, Inc.</u>, 960 F.2d 1013, 1015-16 (11th Cir. 1992) ("It is immaterial whether the sealing of the record is an integral part of a negotiated settlement between the parties, even if the settlement comes with the court's active encouragement.  Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case."); <u>McKenzie v. Brannan</u>, Case No. 20-262, 2020 U.S. Dist. LEXIS 211557, at *14 (D. Me. Nov. 12, 2020) ("[T]he Estate seems to maintain that because the parties entered into the mediation with assurances of confidentiality, the Court is bound to enforce the secrecy provisions of their agreement.  This is not correct.") (citing <u>P.R. Land & Fruit, S.E. v. Municipio de Culebra</u>, Case No. 09-2280, 2019 U.S. Dist. LEXIS 143915, at *8 (D.P.R. July 23, 2019) (McGiverin, Mag. J.) ("An agreement by the existing parties is not itself a sufficient basis to violate the public's right to public access.") (citation

Civil Nos. 13-1296 *et al*., (FAB)                                              11

omitted)); Lohman v. Rite Aid Corp., Case No. 11-250, 2011 U.S. Dist. LEXIS 128394, at *3 (D.N.H. Nov. 2, 2011) ("Under the circumstances of this case, defendants' interest in preserving the confidentiality of their agreement with [the plaintiff] does not outweigh the strong presumption in favor of public access."

Because the defendants have failed to set forth a compelling reason for denying the public access to the settlement agreements and the Law 9 expense report, Serrano's motion to unseal is **GRANTED**.

**IV. Conclusion**

For the reasons set forth above, Serrano's motion to unseal is **GRANTED**. (Case No. 13-1296, Docket No. 454.)  The Clerk of the Court shall remove the "case participants" restriction from all docket entries in this action.  The record shall be made public. The Clerk will ensure that Oscar Serrano receives a copy of this Opinion and Order.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 9, 2022.

                              s/ Francisco A. Besosa
                               FRANCISCO A. BESOSA
                               UNITED STATES DISTRICT JUDGE